UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JERZY JASNOSZ, | CASE NO. C09-952JLR |
| Plaintiff, | ORDER |
| v. | |
| J.D. OTT COMPANY, INC., | |
| Defendant. | |

**I.     INTRODUCTION**

This matter is before the court on Defendant J.D. Ott Company, Inc.'s ("J.D. Ott") motion to enforce a settlement agreement (Dkt. # 35), *pro se* Plaintiff Jerzy Jasnosz's motion for a continuance of the noting date of J.D. Ott's motion (Dkt. # 45), J.D. Ott's motion to strike Mr. Jasnosz's response to J.D. Ott's motion to enforce a settlement agreement (Dkt. # 50), and Mr. Jasnosz's motion to strike J.D. Ott's motion to strike (Dkt. # 51). The court has considered all of the motions, all submissions filed in support of and opposition to the motions, as well as all of the pleadings on file. No party has

ORDER- 1

asked for oral argument with regard to any of these motions, and the court deems all of these motions to be appropriate for disposition without oral argument. For the reasons stated below, the court GRANTS Mr. Jasnosz's motion for a continuance (Dkt. # 45), and DENIES all of the other motions (Dkt. ## 35, 50, 51).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Mr. Jasnosz filed his complaint for employment discrimination under Title VII of the Civil Rights Act of 1964 on July 9, 2009. (Compl. (Dkt. # 1).) Mr. Jasnosz filed an amended complaint on November 2, 2009. (Am. Compl. (Dkt. # 6).) On February 23, 2010, the court entered an order instructing the parties to "exchange written demands for settlement" and to "meet and discuss settlement" by August 23, 2010. (Min. Ord. re: Mediation (Dkt. # 15) at 1.) The parties began discussing settlement in July 2010. (Lennon Decl. (Dkt. # 37) ¶ 2.)

J.D. Ott asserts that, on September 22, 2010, during a telephone conversation with its counsel, Mr. Jasnosz offered to settle his claim for $21,000, with 20% or more to be withheld for federal income tax purposes, and the remaining amount to be paid in two installments during the first week of January 2011. (*Id.* ¶ 3b.)[1] J.D. Ott also asserts that Mr. Jasnosz indicated that his offer was in exchange for a release of all his claims against J.D. Ott and a confidentiality provision. (*Id.*) J.D. Ott does not assert that it accepted Mr. Jasnosz's alleged oral offer during this telephone conversation. (*See id.*) Indeed, J.D. Ott

---

[1] There are two paragraph 3's in Ms. Lennon's declaration. (Lennon Decl. at 2.) The court will refer to the first paragraph 3 in Ms. Lennon's declaration as paragraph 3a, and the second paragraph 3 as paragraph 3b.

ORDER- 2

admits that it waited to respond to Mr. Jasnosz's "offer" until after it had received a subsequent letter from Mr. Jasnosz. (*See id.* ¶¶ 3b-4, Ex. C.)

On September 23, 2010, Mr. Jasnosz delivered a letter to the offices of J.D. Ott's counsel outlining his settlement position in more detail. (*Id.* ¶ 3b, Ex. C.) Mr. Jasnosz's letter discusses settling his dispute for a payment from J.D. Ott of $21,000, with 20% "or other percentage" withheld from the settlement amount for federal income tax. (*Id.*, Ex. C.) He also states that he wants the payment to be in the form of two checks dated between January 4 and January 7, 2011. (*Id.*) In addition, Mr. Jasnosz requests other modifications to the various terms of a proposed written settlement agreement on which the parties apparently had been working. (*Id.*) Specifically, Mr. Jasnosz states:

> After recent analysis . . . plaintiff have [sic] discovered that provisions of the Release Agreement does [sic] not properly assure execution of the settlement payment, and that another provision states (informs) that if one condition of the Release agreement [sic] will not be fulfilled, the others will still be binding. So, taking into considerations those possibilities, plaintiff expects . . . modifications of points of the Release Agreement, to accommodate those concerns . . . . Other minor revisions, of the Release Agreement; [sic] as described in my previous settlement correspondence, should also be considered for the final revisions of that Release Agreement". [sic]

(*Id.*)

J.D. Ott states that its counsel then left a telephone message for Mr. Jasnosz on the same day, stating that J.D. Ott "accepted his offer to settle this case for $21,000, 28% to be withheld for federal income tax purposes and the remainder to be paid in two installments during the first week of 2011, in exchange for a release of all his claims against J.D. Ott and a confidentiality provision." (*Id.* ¶ 4.) In addition, J.D. Ott's counsel

sent a confirming letter to Mr. Jasnosz dated September 23, 2010. (*Id.* ¶ 4, Ex. D.) The letter states:

> This letter is to confirm the voicemail message I left for you this afternoon at 2:52 P.M.. [sic]  As I indicated in my message, J.D. Ott accepts your offer of $21,000 to be paid in two checks dated January 4, 2011 and January 5, 2011, in exchange for a full and complete release of all your claims against J.D. Ott and a confidentiality provision.  J.D. Ott agrees to withhold 28% from the settlement payment for federal income tax purposes.  And, J.D. Ott also agrees to work with you, through its counsel, to revise the language in the Settlement and Release Agreement.
>
> ******
>
> Also, please contact us to set up a time when you are available to meet to discuss and revise the terms of the Settlement and Release Agreement.

(*Id.*)

Mr. Jasnosz and counsel for J.D. Ott met on September 30, 2010, to work on a written settlement agreement. (*Id.* ¶ 6.) The parties spent approximately three hours attempting to come to terms on a written agreement. (*Id.*) Nevertheless, Mr. Jasnosz was not satisfied with the proposed revisions, and was unwilling to execute a written agreement. (*Id.*) The parties met again on October 8, 2010, "in a second attempt to finalize and execute a written document . . . ." (*Id.* ¶ 7.) During this meeting, the parties "discussed revising and adding language to the Settlement and Release Agreement" on which they had been working. (*Id.*) Again, Mr. Jasnosz was apparently unsatisfied with the proposed revisions, and was unwilling to sign a written agreement. (*Id.*)

Counsel for J.D. Ott states that on the same day, Mr. Jasnosz delivered to counsel's office a proposed Joint Motion and Stipulation to Postpone Court Deadlines Pending Final Settlement that Mr. Jasnosz drafted and proposed filing with the court. (*Id.*

¶ 8, Ex. E.) The proposed joint motion states "Jerzy A. Jasnosz and Defendant J.D. Ott Company, Inc. . . . have reached a mutually agreeable settlement in the above-referenced action." (*Id.*) Neither party signed the joint motion, and it was never filed with the court. (*See id.,* Ex. E.)

Counsel for J.D. Ott states that the parties have engaged in several telephone conversations following their two face-to-face meetings, but have never been able to successfully agree upon a written settlement agreement. (*Id.* ¶ 9.) Ultimately, Mr. Jasnosz declined to continue to work on finalizing any form of written agreement. (*Id.*) On December 1, 2010, J.D. Ott filed its motion to enforce a settlement agreement.

The parties appeared before the court with regard to other motions on December 14, 2010. At the end of the hearing, counsel and Mr. Jasnosz met again in an effort to settle their dispute. The court offered to place any settlement that they were able to reach on the court's record that day. Following their meeting, the parties informed the court that they were again unable to reach agreement.

From this point on, the parties began filing a series of scheduling and procedural motions. On December 16, 2010, Mr. Jasnosz filed a motion seeking a continuance of the noting date for J.D. Ott's motion to enforce a settlement agreement. (Dkt. # 45.) Mr. Jasnosz then filed his response to J.D. Ott's motion on December 21, 2010. (Resp. (Dkt. # 49).) On December 27, 2010, J.D. Ott moved to strike Mr. Jasnosz's response. (Dkt. # 50.) Mr. Jasnosz responded on January 3, 2011, with his own motion to strike J.D. Ott's motion to strike. (Dkt. # 51.)

### III.   ANALYSIS

**A.  J.D. Ott's Motion to Enforce a Settlement Agreement**

"The interpretation and validity of a release of claims under Title VII is governed by federal law." *Storman v. W. Coast Grocery Co.,* 884 F.2d 458, 461 (9th Cir. 1989). Mr. Jasnosz bases his complaint upon J.D. Ott's alleged violation of Title VII. (*See generally* Compl. & Am. Compl.)  Therefore, federal common law governs in determining whether the parties here have reached a settlement agreement.  *See e.g. E.E.O.C. v. Kidman,* Nos. 04-17005, 04-17489, 2007 WL 1187962, at *1 (9th Cir. Apr. 23, 2007).

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987).  However, the court "may enforce only *complete* settlement agreements." *Id.* (emphasis in original).  A complete settlement agreement is one where the parties have manifested their mutual assent to all the material terms. *See Doi v. Halekulani Corp.,* 276 F.3d 1131, 1136-40 (9th Cir. 2002) (holding that district court did not abuse its discretion by enforcing a settlement agreement where the parties had placed the material terms of the settlement agreement on the record in open court); *see Callie,* 829 F.2d at 891; *see also* Restatement (Second) Contracts § 17.  "Materiality turns on what the parties considered a fundamental part of settlement at the time of formation." *Kidman,*

2007 WL 1187962, at *2.  Federal common law also requires that the parties manifest an objective intent to be bound by the settlement agreement.  *Id.* at *1.[2]

J.D. Ott asserts that Mr. Jasnosz's September 23, 2010 letter memorializes his September 22, 2010 oral offer of settlement.  (*See* Mot. at 2 ("Plaintiff reiterated his settlement offer in a confirming letter.")[3]  Yet, in his September 23, 2010 letter, Mr. Jasnosz leaves several terms of the purported settlement agreement open or undefined.  Specifically, he is indefinite with regard to the amount of withholding for purposes of federal income tax of the settlement amount that would be acceptable to him.  He indicates that he would like 20% or some "other percentage" withheld.  (Lennon Decl., Ex. C.)  He also seeks various modifications to the terms of the draft written agreement.  He demonstrates concern that "[a]fter recent analysis . . . [he had] discovered that provisions of the Release Agreement do[] not properly assure execution of the settlement

---

[2]Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.  *Callie,* 829 F.2d at 890.  Here, the evidence submitted by J.D. Ott, the party moving to enforce the purported oral settlement agreement, fails to make even a threshold factual demonstration that the parties had an intent to be bound by the purported oral agreement, or that they had agreed upon all the material terms.  Because J.D. Ott did not submit evidence sufficient to create a material factual dispute concerning the existence or terms of the purported oral agreement, the court finds under these circumstances that an evidentiary hearing is neither warranted nor required. The court also notes that no party has requested an evidentiary hearing with regard to this matter.

[3] It is important to note that J.D. Ott does not assert that it "accepted" Mr. Jasnosz's purported oral offer prior to receiving his September 23, 2010 letter.  Thus, to the extent that the September 23, 2010 letter differs in any respect to Mr. Jasnosz's oral "offer" on September 22, 2010, it would supersede that earlier "offer."  Thus, the only "offer" the court need consider for purposes of this motion is Mr. Jasnosz's September 23, 2010 letter.  As noted below, however, although Mr. Jasnosz is clearly engaged in the process of negotiation in his September 23, 2010 letter, his statements are not definite enough to constitute a binding offer to settle even if "accepted."

1  payment." (*Id.*)  He also states that "[he] expects . . . modifications of points of the

2  Release Agreement, to accommodate those concerns . . . ." (*Id.*)

3        While Mr. Jasnosz is clearly engaged in settlement negotiations throughout his

4  September 23, 2010 correspondence, his language and the proposed terms contained

5  within his letter are not definite enough to constitute a binding offer to settle.  Neither

6  does the letter express any intent to be bound by anything other than a finalized written

7  settlement agreement executed by the parties.  Mr. Jasnosz's letter indicates that he

8  anticipates further modifications to the terms of a draft written settlement agreement prior

9  to his assent.  The court further finds that the terms that concern Mr. Jasnosz, including

10  the amount to be withheld from his settlement payment, and the method of payment that

11  he believed did not "properly assure execution of the settlement payment," are material to

12  the agreement and are plainly still in dispute.

13        In addition, the court finds that even if Mr. Jasnosz's September 23, 2010, letter

14  could be considered an "offer," J.D. Ott's September 23, 2010, letter in reply would not

15  constitute a valid "acceptance."  In its letter, J.D. Ott purports to "accept" Mr. Jasnosz's

16  "offer" by stating in part that "J.D. Ott agrees to withhold 28% from the settlement

17  payment for federal income tax purposes." (*Id.*, Ex. D.)  Although Mr. Jasnosz stated in

18  his September 23, 2010 letter that he would be willing to accept 20% or some "other

19  percentage" of withholding (*id.,* Ex. C), there is no indication in any of the papers

20  submitted by the parties that Mr. Jasnosz ever specifically agreed to a 28% withholding.

21  Further, J.D Ott stated not once, but twice, in its September 23, 2010 letter that it would

22  work with Mr. Jasnosz to "revise" the language or terms of the written Settlement

Agreement and Release. (*Id.,* Ex. D.) Thus, J.D. Ott also anticipated further revision to the terms of the settlement prior to the parties' execution of the agreement, and it communicated this understanding to Mr. Jasnosz.[4]

The court, therefore, finds that the parties did not manifest an objective intent to be bound by any purported oral settlement agreement. The court further finds that material terms of any possible settlement between the parties remain in dispute, and thus the parties have not agreed upon a complete settlement. Accordingly, J.D. Ott's motion to enforce a purported settlement agreement in this matter (Dkt. # 36) is DENIED.

**B. The Parties' Remaining Motions to Continue and to Strike**

Mr. Jasnosz moved to continue the noting date of J.D. Ott's motion to enforce a settlement agreement. (Dkt. # 45.) J.D. Ott noted its motion for the third Friday after filing and service. (*See* Dkt. # 36.) The Local Rules for the Western District of Washington provide that non-dispositive motions "shall be noted for consideration no earlier than the third Friday after filing and service of the motion; and all dispositive motions . . . shall be noted for consideration no earlier than the fourth Friday after filing and service of the motion." Local Rules W.D. Wash. CR 7(d)(3). The court finds that because J.D. Ott's motion, if granted, would have been dispositive of Mr. Jasnosz's

---

[4] The court places no factual significance on the draft "Joint Motion and Stipulation to Postpone Court Deadlines Pending Final Settlement." (Lennon Decl., Ex. E.) J.D. Ott alleges that this document was drafted by Mr. Jasnosz. (*Id.* ¶ 8.) Even assuming this is true, and that it was drafted during the course of settlement negotiations, neither party ever signed it, and it was never filed with the court. Parties can produce drafts of all kinds of documents during the course of settlement negotiations. In this context, the creation and existence of an unsigned and unfiled document does not constitute evidence that a final settlement has been reached.

1  claims, it should have been noted for the fourth Friday after filing and service.  The court,

2  therefore, GRANTS Mr. Jasnosz's motion to continue (Dkt. # 45).

3       J.D. Ott moved to strike Mr. Jasnosz's response to its motion to enforce a

4  settlement agreement.  (Dkt. # 50.)  Mr. Jasnosz, in turn, moved to strike J.D. Ott's

5  motion to stike.  (Dkt. # 51.)  Mr. Jasnosz filed his response to J.D. Ott's motion to

6  enforce a settlement agreement on Tuesday, December 21, 2010.  (Resp. (Dkt. # 49).)  If

7  J.D. Ott's motion had been properly noted for the fourth Friday following filing and

8  service, then Mr. Jasnosz's response would have been due on Monday, December 20,

9  2010.  *See* Local Rules W.D. Wash. CR 7(d)(3) ("Any opposition papers shall be filed

10 and served not later than the Monday before the noting date.").  Thus, Mr. Jasnosz filed

11 his response one day late.  Nevertheless, the court recognizes Mr. Jasnosz's *pro se* status,

12 his confusion over the proper timing of his response in light of J.D. Ott's original

13 erroneous noting date, and the lack of prejudice to J.D. Ott caused by Mr. Jasnosz's one

14 day delinquency.  In particular, the court notes that Mr. Jasnosz's response was

15 essentially irrelevant to the court's ruling on J.D. Ott's motion to enforce the settlement

16 agreement because, based on J.D. Ott's submissions to the court alone, it was evident that

17 no settlement agreement had been reached by the parties.  *See infra* § III.A.  In light of

18 these facts, the court DENIES J.D. Ott's motion to strike Mr. Jasnosz's response (Dkt. #

19 50), and likewise DENIES Mr. Jasnosz's motion to strike J.D. Ott's motion to strike as

20 MOOT (Dkt. # 51).

21

22

## IV. CONCLUSION

For the foregoing stated reasons, the court DENIES J.D. Ott's motion to enforce a settlement agreement (Dkt. # 36), GRANTS Mr. Jasnosz's motion to continue the noting date of J.D. Ott's motion (Dkt. # 45), DENIES J.D. Ott's motion to strike Mr. Jasnosz's response to its motion to enforce a settlement agreement (Dkt. #50), and DENIES Mr. Jasnosz's motion to strike J.D. Ott's motion to strike (Dkt. # 51) as MOOT.

Dated this 24th day of January, 2011.

*[signature]*

JAMES L. ROBART
United States District Judge